**SPICER THEATRE, INC., Petitioner,**

v.

**COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.**

**COMMISSIONER OF INTERNAL REV-
ENUE, Petitioner,**

v.

**COPLEY THEATRE, INC., Respondent.**

**Nos. 16047, 16048.**

United States Court of Appeals
Sixth Circuit.

June 8, 1965.

Samuel Goldman, Akron, Ohio, for Spicer and Copley Theaters, Harris, Sacks, Subrin & Goldman, Akron, Ohio, on the brief.

William A. Friedlander, Dept. of Justice, Washington, D. C., for commissioner, Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Attys., Dept. of Justice, Washington, D. C., on the brief.

Before CECIL, O'SULLIVAN and PHILLIPS, Circuit Judges.

HARRY PHILLIPS, Circuit Judge.

The tax court determined a deficiency in income taxes against petitioner Spicer Theatre, Inc. (referred to herein as Spicer). In its petition for review, Spicer urges that the decision of the tax court should be reversed. The companion case of Copley Theatre, Inc. (herein referred to as Copley) was not decided by the tax court.

Edward J. Rabb was president and general manager of both Spicer and Copley, and all the common stock of both

corporations was owned by him and his wife.[1] In its fiscal year ending January 31, 1954, Copley sustained a net operating loss of $79,853.25.

On May 1, 1957, Spicer and Copley executed a document entitled "Lease Agreement" whereby Spicer leased to Copley two drive-in theatres at an annual rental of $48,000. The lease agreement was arranged by Mr. Rabb, as president and general manager of both lessor and lessee, upon the recommendation of a tax specialist in order to take advantage of Copley's net operating loss.

During its two taxable years prior to the lease arrangement, Spicer had net taxable income of $31,608.54 and $33,990.82, respectively. The obligations of the theatre properties which it assumed under the lease were such that it received no net income from the lease for the fiscal year ending January 31, 1958, and only a nominal profit for the following year. Copley, on the other hand, made substantial profits for both years which it undertook to set off against its net operating loss carryover.

The tax court concluded that the amount of the rental "was geared to leaving sufficient income to Copley to absorb most of its net operating loss within the two-year period of the lease, based on a projection of Spicer's profits from the same operations."

The facts are set forth in more detail in the opinion of the tax court, 44 T.C. No. 22.

The Commissioner reallocated to Spicer for its fiscal years 1958 and 1959 the "income assigned to Copley Theatre, Inc.," by authority of 26 U.S.C. § 482.[2]

1. Mr. Rabb owned 25 per cent of the stock of both corporations from the date of their incorporation, and he and his wife acquired all the remaining capital stock in both companies January 16, 1957.

2. "In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary or his delegate may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses. Aug. 16, 1954, 9:45 a.m., E.D.T., c. 736, 68A Stat. 162."

■ Under section 482, the Commissioner is given the power to scrutinize closely all transactions between mutually controlled corporations.

"His object is to arrive at the true net income of each controlled taxpayer and the technique used is the application of the standard of an uncontrolled taxpayer dealing at arm's length with another uncontrolled taxpayer. Whenever the lack of an arm's length relationship produces a different economic result from that which would ensue in the case of two uncontrolled taxpayers dealing at arm's length, the Commissioner is authorized to allocate gross income and deductions." (This case involved § 45, Internal Revenue Code of 1939, which is substantially similar to § 482 of the 1954 Code.) Commissioner of Internal Revenue v. Chelsea Products, Inc., 197 F.2d 620, 623 (C.A. 3).

In Simon J. Murphy Co. v. Commissioner of Internal Revenue, 231 F.2d 639, 644 (C.A. 6), although finding nothing fictitious in the transaction there involved, this court said:

"Litigation under the statute shows that the Section has been applied to circumstances involving an improper manipulation of financial accounts, an improper juggling of the accounts between the related organizations, an improper 'milking' of one business for the benefit of the other, or some similar abuse of proper financial accounting, all made possible by the control of the two businesses by the same interests. When the Commissioner determined that a transaction between the controlled parties was not 'at arm's length,' an allocation would be justified in order to reflect the true net income which would have resulted if one uncontrolled taxpayer had dealt at arms length with another uncontrolled taxpayer. Substance has been substituted for form." (This case also involved § 45 of the Internal Revenue Code of 1939.)

■ Clearly the purpose of former § 45 and present § 482 is to prevent the avoidance of tax or the distortion of income by the shifting of profits from one business to another.

■ The effect of § 482 is to grant the Commissioner broad discretionary power. The burden is placed on the taxpayer to prove the determination to be arbitrary. Aiken Drive-In Theatre Corp. v. United States, 281 F.2d 7, 10 (C.A. 4). "His determination in this regard will be overturned only if shown by the taxpayer to have been arbitrary or unreasonable. A determination as to whether or not the Commissioner has exceeded or abused his discretion turns upon questions of fact and is subject to limited review." Ballentine Motor Co. v. Commissioner of Internal Revenue, 321 F.2d 796, 800 (C.A. 4); Hall v. Commissioner of Internal Revenue, 294 F.2d 82 (C.A. 5).

■■ We hold that the findings of the tax court are not "clearly erroneous" but to the contrary are supported substantially by the evidence. Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218.

The parties have stipulated in this court that affirmance of the Spicer case will render the Copley case moot. The petition in the latter case is therefore dismissed.

Affirmed.