T.C. Memo. 1999-389


UNITED STATES TAX COURT


RONALD D. AND PAULA J. PITTMAN, ET AL.,[1] Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 2396-98, 2397-98,   Filed November 29, 1999.
            2464-98.


<u>Frederick O. Plater</u>, for petitioners.

<u>Ann L. Darnold</u> and <u>Bruce K. Meneely</u>, for respondent.

-------------------------

[1]  Cases of the following petitioners are consolidated
herewith:  Paul W. and Nova J. Kemp, docket No. 2397-98; and
Douglas W. and Kelly J. Kemp, docket No. 2464-98.

MEMORANDUM OPINION

DAWSON, Judge:  These consolidated cases were assigned to Special Trial Judge Robert N. Armen, Jr., pursuant to Rules 180, 181, and 183.[2]  The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

ARMEN, Special Trial Judge:  This matter is before the Court on petitioners' motion, as supplemented, for reasonable litigation and administrative costs under section 7430 and Rules 230 through 233.

After concessions by respondent,[3] the issues for decision are as follows:

(1) Whether respondent's position in the administrative and court proceedings was substantially justified.  We hold that it was.

---

[2]  All Rule references are to the Tax Court Rules of Practice and Procedure.  All section references are to the Internal Revenue Code, as amended.

[3]  Respondent concedes:  (1) Petitioners exhausted their administrative remedies, see sec. 7430(b)(1); (2) petitioners did not unreasonably protract the proceedings, see sec. 7430(b)(3); (3) petitioners substantially prevailed, see sec. 7430(c)(4)(A)(i); and (4) petitioners satisfied the applicable net worth requirement, see sec. 7430(c)(4)(A)(ii).

(2) Whether the administrative and litigation costs claimed by petitioners are reasonable.  In light of our holding as to the first issue, we need not address this second issue.

Neither party requested an evidentiary hearing, and the Court concludes that such a hearing is not necessary for the proper disposition of petitioners' motion.  See Rule 232(a)(2).  We therefore decide the matter before us on the basis of the record that has been developed to date.

Background

Petitioners resided in Oklahoma at the time that the petitions were filed with the Court.

Petitioners Ronald D. Pittman (Pittman), Douglas W. Kemp (D. Kemp), and Paul W. Kemp (P. Kemp) are shareholders of Industrial Coil, Inc. (IC), an S corporation, and each owns 33.33 percent of its stock.  IC was founded in 1982 as a partnership of Pittman, D. Kemp, and P. Kemp.  An election was made on January 1, 1989, to convert IC into an S corporation.

IC manufactures electric coils according to specifications provided by its customers.  The specifications include the dimensions, types of materials to be used, and other requirements necessary to manufacture the coils.  IC purchases materials locally for each job depending on customer specification.  Approximately 90 percent of IC's jobs are completed within 3

days, and all jobs are completed within 5 days. Completed orders are immediately shipped to the customer.

IC maintains both its income tax and its financial accounting records on the cash/hybrid method of accounting and has used that method since its incorporation. The cash/hybrid method of accounting is the standard method of accounting for this type and size of company. IC has not attempted to prepay expenses or defer the recognition of income.

IC timely filed its 1994 income tax return. On that return, IC reported gross receipts of $1,176,035 and claimed cost of goods sold of $822,946, of which $525,861 (or 44.7 percent of gross receipts) consisted of purchases.

Respondent determined that IC should be required to use the accrual method of accounting because its cash/hybrid method did not clearly reflect its income. Respondent's determination served to increase IC's ordinary income. Thereafter, respondent issued separate notices of deficiency, each dated November 7, 1997, to petitioners determining deficiencies in petitioners' Federal income taxes for 1994 in the following amounts:

| Docket No. | Deficiency |
| --- | --- |
| 2396-98 | $6,019 |
| 2397-98 | 3,611 |
| 2464-98 | 5,070 |

By separate petitions, each filed on February 9, 1998, petitioners commenced their cases in this Court. Respondent

filed answers on April 6, 1998. On December 7, 1998, the Court consolidated these cases for trial.

On January 14, 1999, the parties executed a stipulation of facts, which was filed with the Court on February 1, 1999. Paragraph 15 of the stipulation of facts, e.g., stated as follows:

> Industrial Coil does not maintain an inventory of materials or completed coils. All necessary materials are obtained locally after a determination of the specific materials needed to complete the job is made. No merchandise is held for sale to customers in the ordinary course of Industrial Coil's business.

The cases were submitted fully stipulated under Rule 122 on February 1, 1999. The Court directed the parties to file opening briefs on April 19, 1999, and reply briefs 45 days thereafter.

After respondent's District Counsel attorney prepared her proposed opening brief, she sent it, along with copies of the stipulation of facts and both parties' trial memoranda, to the Assistant Chief Counsel (Field Service) for review before filing with the Court. The attorney in the Assistant Chief Counsel's office responsible for the review opined that the use of the term "merchandise" in paragraph 15 of the stipulation of facts was hazardous to respondent's position because the term is "a term of art in the change of accounting method regulations and opinions." The attorney concluded that the wording of paragraph 15 amounted to a concession of a key fact in the cases.

Thereafter, on March 1, 1999, counsel for respondent contacted petitioners to inquire whether they would agree to join in a motion requesting that the record be reopened and, pursuant to Rule 91(e), that paragraph 15 of the stipulation of facts be modified. On March 2, 1999, petitioners informed respondent's counsel that they would not agree to reopen the record. Two days later, on March 4, 1999, respondent conceded the cases and prepared stipulated decisions reflecting no deficiencies in petitioners' income taxes for the year in issue. Decisions to that effect were entered by this Court on March 31, 1999.

Petitioners thereafter filed their motion for administrative and litigation costs. In accordance with section 7430 and Rule 232, the decisions entered on March 31, 1999, were vacated and set aside.

Discussion

We apply section 7430 as most recently amended by Congress in the IRS Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3101, 112 Stat. 685, 727. However, certain of the amendments made by RRA 1998 to section 7430 (regarding the reasonableness of costs, the type of recoverable costs, and other provisions not at issue herein) apply only to costs incurred after January 18, 1999. To the extent of the portion of the claimed costs incurred on or before January 18, 1999, we apply

section 7430 as amended by the Taxpayer Relief Act of 1997 (TRA), Pub. L. 105-34, secs. 1285, 1453, 111 Stat. 788, 1038, 1055.

A. <u>Requirements for a Judgment Under Section 7430</u>

Under section 7430, a judgment for litigation costs incurred in connection with a court proceeding may only be awarded only if a taxpayer:  (1) Is the "prevailing party"; (2) has exhausted his or her administrative remedies within the IRS; and (3) did not unreasonably protract the court proceeding.  Sec. 7430(a) and (b)(1), (3).  Similarly, a judgment for administrative costs incurred in connection with an administrative proceeding may be awarded under section 7430 only if a taxpayer:  (1) Is the "prevailing party"; and (2) did not unreasonably protract the administrative proceedings.  Sec. 7430(a) and (b)(3).

A taxpayer must satisfy each of the respective requirements in order to be entitled to an award of litigation or administrative costs under section 7430.  See Rule 232(e).  Upon satisfaction of these requirements, a taxpayer may be entitled to reasonable costs incurred in connection with the administrative or court proceedings.  See sec. 7430(a)(1) and (2), (c)(1) and (2).

To be a prevailing party, the taxpayer must substantially prevail with respect to either the amount in controversy or the most significant issue or set of issues presented and satisfy the applicable net worth requirement.  See sec. 7430(c)(4)(A).

Respondent concedes that petitioners have satisfied the requirements of section 7430(c)(4)(A).  Petitioners will nevertheless fail to qualify as the prevailing party if respondent can establish that his position in the court and administrative proceedings was substantially justified.  See sec. 7430(c)(4)(B).

B.  <u>Substantial Justification</u>

The Commissioner's position is substantially justified if, on the basis of all of the facts and circumstances and the legal precedents relating to the case, the Commissioner acted reasonably.  See <u>Pierce v. Underwood</u>, 487 U.S. 552 (1988); <u>Sher v. Commissioner</u>, 89 T.C. 79, 84 (1987), affd. 861 F.2d 131 (5th Cir. 1988).  In other words, to be substantially justified, the Commissioner's position must have a reasonable basis in both law and fact.  See <u>Pierce v. Underwood</u>, <u>supra</u>; <u>Rickel v. Commissioner</u>, 900 F.2d 655, 665 (3d Cir.1990), affg. in part and revg. in part on other grounds 92 T.C. 510 (1989).  A position is substantially justified if the position is "justified to a degree that could satisfy a reasonable person."  <u>Pierce v. Underwood</u>, <u>supra</u> at 565 (construing similar language in the Equal Access to Justice Act).  Thus, the Commissioner's position may be incorrect but nevertheless be substantially justified "'if a reasonable person could think it correct'".  <u>Maggie Management Co. v.</u>

Commissioner, 108 T.C. 430, 443 (1997) (quoting Pierce v. Underwood, supra at 566 n.2).

The relevant inquiry is "whether * * * [the Commissioner] knew or should have known that * * * [his] position was invalid at onset".  Nalle v. Commissioner, 55 F.3d 189, 191 (5th Cir. 1995), affg. T.C. Memo. 1994-182.  We look to whether the Commissioner's position was reasonable given the available facts and circumstances at the time that the Commissioner took his position.  See Maggie Management Co. v. Commissioner, supra at 443; DeVenney v. Commissioner, 85 T.C. 927, 930 (1985).

The fact that the Commissioner eventually concedes, or even loses, a case does not establish that his position was unreasonable.  See Bouterie v. Commissioner, 36 F.3d 1361, 1367 (5th Cir. 1994), revg. on other grounds T.C. Memo. 1993-510; Estate of Perry v. Commissioner, 931 F.2d 1044, 1046 (5th Cir. 1991); Sokol v. Commissioner, 92 T.C. 760, 767 (1989).  However, the Commissioner's concession does remain a factor to be considered.  See Powers v. Commissioner, 100 T.C. 457, 471 (1993), affd. in part, revd. in part and remanded on another issue 43 F.3d 172 (5th Cir. 1995).

As relevant herein, the position of the United States that must be examined against the substantial justification standard with respect to the recovery of administrative costs is the position taken by the Commissioner as of the date of the notice

of deficiency.  See sec. 7430(c)(7)(B).  The position of the United States that must be examined against the substantial justification standard with respect to the recovery of litigation costs is the position taken by the Commissioner in the answer to the petition.  See Bertolino v. Commissioner, 930 F.2d 759, 761 (9th Cir. 1991); Sher v. Commissioner, supra at 134-135. Ordinarily, we consider the reasonableness of each of these positions separately.  See Huffman v. Commissioner, 978 F.2d 1139, 1144-1147 (9th Cir. 1992), affg. in part, revg. in part and remanding on other issues T.C. Memo. 1991-144.  In the present cases, however, we need not consider two separate positions because there is no indication that respondent's position changed or that respondent became aware of any additional facts that rendered his position any more or less justified between the issuance of the notices of deficiency and the filing of the answers to the petitions.

We now turn to petitioners' contention that respondent's position was not substantially justified.  In order to decide whether respondent's position was substantially justified we must review the substantive merits of these cases.

Respondent determined that IC's cash/hybrid method of accounting did not clearly reflect its income because merchandise was an income-producing factor in IC's business and, therefore, that the use of inventories was necessary to clearly determine

IC's income.  Respondent therefore required IC to use the accrual method of accounting.  Thus, the substantive issue for decision was whether respondent abused his discretion in requiring IC to change from the cash/hybrid method of accounting to the accrual method.  "Subsumed in this issue is the question whether * * * [the taxpayer] should be required to use the inventory method for tax purposes."  J.P. Sheahan Associates, Inc. v. Commissioner, T.C. Memo. 1992-239.  Accordingly, we turn to the applicable Code provision and case law dealing with this matter.

We begin with section 446.  That section provides in pertinent part as follows:

> SEC. 446(a). General Rule.--Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.
>
> (b) Exceptions.--If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income.
>
> (c) Permissible Methods.--Subject to the provisions of subsections (a) and (b), a taxpayer may compute taxable income under any of the following methods of accounting--
>
>> (1) the cash receipts and disbursements method;
>>
>> (2) an accrual method;
>>
>> (3) any other method permitted by this chapter; or
>>
>> (4) any combination of the foregoing methods permitted under regulations prescribed by the Secretary.

In administering section 446, the Commissioner has broad powers to determine whether an accounting method used by a taxpayer clearly reflects income. See <u>Commissioner v. Hansen</u>, 360 U.S. 446, 467 (1959). Generally, courts do not interfere with the Commissioner's determination unless it is an abuse of discretion. See <u>Thor Power Tool Co. v. Commissioner</u>, 439 U.S. 522, 532 (1979); <u>Lucas v. American Code Co.</u>, 280 U.S. 445, 449 (1930); <u>Ford Motor Co. v. Commissioner</u>, 102 T.C. 87, 92 (1994), affd. 71 F.3d 209 (6th Cir. 1995). Whether an abuse of discretion exists is a question of fact. See <u>Rodebaugh v. Commissioner</u>, 518 F.2d 73, 75 (6th Cir. 1975), affg. T.C. Memo. 1974-36. The taxpayer bears the burden of proving an abuse of discretion by the Commissioner. See <u>Asphalt Prods. Co. v. Commissioner</u>, 796 F.2d 843, 848 (6th Cir. 1986), affg. on this issue and revg. on another issue <u>Akers v. Commissioner</u>, T.C. Memo. 1984-208, revd. on another issue 482 U.S. 117 (1987). However, the Commissioner cannot require a taxpayer to change from an accounting method that clearly reflects income to an alternative method of accounting merely because the Commissioner considers the alternative method to more clearly reflect the taxpayer's income. See <u>Ansley-Sheppard-Burgess Co. v. Commissioner</u>, 104 T.C. 367, 371 (1995).

If a taxpayer must use inventories, the Commissioner has broad latitude pursuant to section 471 and the regulations

thereunder to determine that the cash method of accounting does

not clearly reflect the taxpayer's income.

Section 471 provides in pertinent part:

> SEC. 471(a). General Rule.--Whenever in the opinion of the Secretary the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer on such basis as the Secretary may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.

Section 1.471-1, Income Tax Regs., in turn provides in

pertinent part:

> Need for inventories.-- In order to reflect taxable income correctly, inventories at the beginning and end of each taxable year are necessary in every case in which the production, purchase, or sale of merchandise is an income-producing factor. * * *

Thus, a taxpayer must use inventories if the production,

purchase, or sale of merchandise is an income-producing factor.

See id.  Whether the production, purchase, or sale of merchandise

is an income-producing factor is decided under the facts and

circumstances of each case.  See Thompson Elec., Inc. v.

Commissioner, T.C. Memo. 1995-292; Honeywell & Subs., Inc. v.

Commissioner, T.C. Memo. 1992-453, affd. without published

opinion 27 F.3d 571 (8th Cir. 1994).

A taxpayer that uses inventories must also generally use the

accrual method of accounting.  See sec. 1.446-1(c)(2)(i), Income

Tax Regs.  As we stated in Ansley-Sheppard-Burgess Co. v.

Commissioner, supra at 377, a taxpayer who is required to use

inventories may use the cash method of accounting only in limited circumstances:

> a taxpayer that is required to use the inventory method of accounting must meet the substantial-identity-of-results test in order to show that the Commissioner's determination requiring a change in its method of accounting was an abuse of discretion. * * *

The substantial-identity-of-results test requires the taxpayer to establish substantial identity of result between the method of accounting used by the taxpayer and the method of accounting the Commissioner has determined clearly reflects the taxpayer's income.  See id.

Respondent's position in these cases was that petitioners were required to use the accrual method of accounting because merchandise was an income-producing factor in IC's business.

Respondent relied on the fact that IC purchased raw materials used to manufacture its custom-made electric coils and that the raw material then became a part of these electric coils. Respondent determined that at a minimum, IC had title to the electric coils it manufactured before sale to its customers. Finally, respondent concluded that since raw materials purchased by IC represented about 45 percent of its gross receipts during 1994, materials were in fact an income-producing factor in IC's business.

In this regard, respondent relied on Epic Metals Corp. & Subs. v. Commissioner, T.C. Memo. 1984-322, affd. without

published opinion 770 F.2d 1069 (3d Cir. 1985). Therein, we held that the Commissioner did not abuse his discretion in requiring a taxpayer to use the accrual method of accounting where the taxpayer ordered materials for each job and sold custom-fabricated metal decking. We reasoned that the taxpayer's possession, even momentarily, of title to the metal decking was sufficient to require the use of inventories and the use of the accrual method of accounting.

Further, respondent relied upon our holding in Thompson Elec., Inc. v. Commissioner, supra, and Wilkinson-Beane, Inc. v. Commissioner, T.C. Memo. 1969-79, affd. 420 F.2d 352 (1st Cir. 1970), where we held that if the cost of material that a taxpayer uses to provide a service is substantial compared to the taxpayer's receipts, the material is an income-producing factor.

Although we need not decide the substantive issue in these cases, we think that respondent's position was sufficiently supported by the facts and circumstances in petitioners' cases and the existing legal precedent. See Pierce v. Underwood, 487 U.S. 552 (1988). Respondent's position was reasonable in fact because respondent reasonably inferred that IC "held" goods for sale and that such goods were an income-producing factor in IC's business. Respondent's position was reasonable in law because respondent reasonably relied upon existing legal precedent that,

under the facts of petitioners' cases, IC should be required to use the accrual method of accounting.

Thus, in these cases, the fact that respondent eventually conceded does not establish that his position was unreasonable. See Bouterie v. Commissioner, 36 F.3d at 1367; Estate of Perry v. Commissioner, 931 F.2d at 1046; Sokol v. Commissioner, 92 T.C. at 767.

Moreover, respondent has never conceded that IC should not be required to use the accrual method of accounting. Rather, as described by the attorney in the Assistant Chief Counsel's office, respondent's concession was based on "a poor choice of words" in the stipulation of facts that amounted to "the concession of a key fact". After discovering the error, respondent promptly conceded his position. It was reasonable for respondent to take the position that IC should be required to use the accrual method of accounting until the time as respondent committed what he regarded as a litigation error. Shortly after discovering the error respondent conceded the cases.

Therefore, we hold that respondent has established that his position in the administrative and litigation proceedings was substantially justified because he acted reasonably given the legal precedent and the circumstances surrounding petitioners' cases. Accordingly, petitioners are not entitled to recover administrative or litigation costs.

On the basis of the foregoing, we need not decide whether petitioners' claimed costs are reasonable.

To reflect the foregoing,

<u>Appropriate orders and</u>

<u>decisions will be entered</u>.